OPINION
Appellant, Stephanie Steinhoff, appeals a decision by the Butler County Court of Common Pleas, Juvenile Division, terminating her rights as a parent of Baby Boy Steinhoff ("child"), and granting Butler County Children Services Board ("BCCSB") permanent custody of the child.[1] We affirm.
 FACTUAL AND PROCEDURAL BACKGROUND
Appellant ran away from her parent's home in Florida with Timothy Wagers in August 1994 just after she turned sixteen years old. Wagers was thirty years old at the time. Appellant claims that she left because her father physically abused her and that she had been raped by her brother. Her brother has since died. Appellant's parents withdrew her from school while she was in the eighth grade. Appellant gave birth on February 14, 1993 to a child fathered by her brother. That child, then age two, was left by appellant in the physical custody of appellant's parents when she ran away. The parents notified the authorities that appellant was a runaway in April 1995. Appellant's parents knew where she lived because appellant had written to her parents.
In May, the police picked up appellant at Wagers' residence and placed her in the Juvenile Detention Center. Appellants' parents made no effort to regain custody of appellant. In July 1995, BCCSB obtained an order granting it temporary custody of appellant when the juvenile court determined appellant was a neglected and dependent child. At the time she was picked up by the police, appellant was four months pregnant with Wagers' child. This child, baby boy Steinhoff, the subject of this action, was born September 23, 1995.
BCCSB filed a dependency complaint alleging Baby Boy Steinhoff to be a child who lacks proper care and support by reason of the mental or physical condition of the parents and that the child's condition or environment is such as to warrant the state, in the interest of the child, in assuming guardianship, pursuant to R.C.2151.04(B) and (C). BCCSB included a request for permanent custody in the dependency complaint, as required by R.C.2151.353(B).
On September 27, 1995, four days following the birth of baby boy Steinhoff, a shelter care hearing was conducted. The magistrate, after acknowledging BCCSB's request for permanent custody, granted temporary custody to BCCSB and ordered a reunification plan prepared. The trial court adopted the magistrate's report as far as it related to temporary custody of the baby being granted to BCCSB, but sustained the BCCSB's objection to the magistrate's recommendation that a reunification plan be prepared by BCCSB. On May 3, 1996, Baby Boy Steinhoff was adjudicated dependent by the court, and the court extended the temporary custody order to November 15, 1996. Ultimately, on December 11, 1996, the trial court granted permanent custody of Baby Boy Steinhoff to BCCSB. Appellant filed this appeal.
Appellant sets forth two assignments of error for review. Appellant's first assignment of error is that the judgment of the trial court granting permanent custody of baby boy Steinhoff to BCCSB is against the manifest weight of the evidence. Appellant argues that the BCCSB did not meet the requirements of R.C.2151.419 and 2151.01(C) when it failed to make reasonable efforts to prevent removal or to return the child to the home. The appellant argues further that the trial court erred by finding that the child could not be placed with his parent within a reasonable time, pursuant to R.C. 2151.414(E).
 LAW
The relevant enabling sections of the Ohio statutory scheme for disposition of a dependent child, which in this case would permit the juvenile court to commit the dependent child to the permanent custody of BCCSB, are sections 2151.353(A)(4), (B) and (H) and sections 2151.414(D) and (E).[2]
The court must conduct a hearing and determine whether the child cannot be placed with one of his parents within a reasonable time or should not be placed with either parent and determine whether such permanent commitment is in the best interest of the child. The statute requires that the BCCSB must include in the dependency complaint a prayer for permanent custody. The degree of proof is by clear and convincing evidence, and R.C. 2151.414(D) and (E) include a number of specific factors for the court's consideration as well as "all relevant factors" and "all relevant evidence."
R.C. 2151.03(C) requires, among other provisions, liberal interpretation and construction of Chapter 2151 to effectuate the care, protection and mental and physical development of children in a family environment, separating the child from its parents only when necessary for "his" welfare.
 ANALYSIS
Although there is a judgment entry in the file sustaining BCCSB's objection to the requirement that BCCSB prepare a reunification plan and striking the requirement from the magistrate's order, a reunification plan was nonetheless implemented. The file contains anecdotal records of efforts and results of efforts to assist and prepare the parents of this infant to reunify with the child. There are also sociological and psychological opinions in the file relating to testing administered to the parents to measure their capabilities and progress as a result of agency assistance and training.
The exhibits and reports show that the baby boy Steinhoff has been with a foster family since shortly after his birth and is thriving. The infant has bonded with the foster parents and is progressing as expected. The foster parents want to adopt him. The biological parents, during regularly scheduled separate visits and combined visits, both demonstrated an inability to meet the child's progressive needs.
The mother was opined to be mildly or moderately retarded and functioning at a nine to ten year age level. Although she made some progress in learning living skills to take care of herself, and despite substantial efforts to help her, she was opined to be unable to live independently and unable to nurture and care for the infant by herself. The father was described as of low average intelligence and a controlling person. The testing suggested substance abuse by him which he denied. Although he was able to learn some techniques such as changing diapers and feeding, he applied the techniques inappropriately. For example, when making formula, he would run water into the bottle containing formula until the bubbles disappeared rather than adding a measured amount of water. He did this even after having received explanations, several times, that by doing so he was diluting the nutrients in the formula.
The Children's Diagnostic Center ("CDC") reported a need for each parent to have the help of a co-parent in order to meet this child's needs, and found that neither parent was suitable as a coparent for the other.
The civil standard of appellate review on a manifest weight question is set forth in two Ohio Supreme Court cases, C.E. Morris v. Foley Construction (1978), 54 Ohio St.2d 279, and Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, both of which must be considered in the analysis. Morris, in the syllabus, sets forth the proposition that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Seasons Coal requires that reviewing courts "be guided by a presumption that the findings of the trier of fact were indeed correct." Id. at 80.
R.C. 2151.419 places the burden upon BCCSB to show at the permanent custody adjudicatory hearing that it made reasonable efforts to eliminate the continued removal of the child from the home. However, if BCCSB removed the child during an emergency in which the child "could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make [such efforts], from determining that the agency made those reasonable efforts." R.C. 2151.419(A).
We note that in the first order entered in this case by the trial court, an emergency custody order, the court included findings of probable cause to believe that removal of the child was necessary to prevent immediate or threatened physical or emotional harm to the child, and that continuing to reside with the parents would be contrary to the child's best interest. The pleading which brought about the emergency custody order alleged that the mother, a run-away child of sixteen, was functioning at an eight to ten-year-old level. The father, then age thirty, was opined by CDC as being unable to parent the baby boy. While represented by counsel and, in the mother's case, also a guardian ad litem, the parents waived their shelter care hearing rights and temporary custody of the child was granted to BCCSB four days after its birth.
This record brings the case within the proviso of R.C.2151.419(A) concerning the absence of proof of reasonable efforts to prevent continued removal of the child from the home. That notwithstanding, the trial court eventually ordered a case plan to be prepared and implemented to work toward reunification. This was done at a dependency hearing which occurred on May 3, 1996. Under the case plan, evaluations of the parents were done by CDC. The parents also received assistance and counseling through the BCCSB case worker and the Focus on Youth Foster Care Agency. The father was evaluated by Dr. Lee, a court appointed psychologist. The mother and father were provided with parenting skills training and coaching from the Ohio State University Co-operative Extension in Butler County. The trial court, after hearing the evidence, found that despite reasonable efforts by BCCSB, reunification was not possible.
On this record there is some competent, credible evidence, which is clear and convincing, going to all the essential elements in a determination that the BCCSB made reasonable, though unsuccessful, efforts to make it possible for the child to return home.
The record further supports by clear and convincing evidence the findings of the trial court that the child cannot be placed with either parent within a reasonable time. Dr. Sherry Baker, following her evaluations of both parents, opined that each would need a co-parent to be able to reunite this child with a parent and that neither is capable of serving as a co-parent to the other. At the permanent custody hearing, the mother was described by a family therapist employed by Focus On Youth as being incapable of meeting the emotional needs of the child and unable to live by herself for another one and one-half to two years even with continued counseling. It will be remembered that baby boy Steinhoff was born on September 23, 1995, and thus has been with a foster family with whom he has bonded and is thriving for fourteen months. The therapist also said that placing the child with the mother would result in additional stresses that would extend the time before which the mother could live independently.
A careful review of the record demonstrates that the trial court's findings are supported by competent and credible evidence going to all the elements of the case. We are guided by the presumption that the findings of the trial court were correct and find nothing that as a matter of law would rebut those findings. The first assignment of error is overruled.
Appellant assigns as the second error that the trial court should not have permitted appellant to waive the dispositional time requirements and should not have indicated that appellant had the burden of proof that "there was no evidence of futility of reunification efforts."
The procedural requirements for this case are set forth in Juv.R. 27, 29 and 32 and allow the juvenile court some latitude as to the conduct of the case.
On May 3, 1996, the dependency issue came on for the dependency adjudicatory hearing, continued in progress from February 26, 1996. The parties stipulated the reports identified at the February 26 hearing and an agreement to adjudicate the child as dependent. The parents, through counsel and the mother's guardian ad litem, asked for a continuance of the required disposition hearing to permit the BCCSB to implement a reunification plan. In discussing the issues that were being agreed upon, and while explaining the procedure to the mother, the court observed that while there are time limitations as to when a case of this type has to be heard, the parents and state agreed to waive those time limits "to give both of you further opportunity to work towards getting this child back, either together or separately." The court continued its explanation by saying, "well there's enough that's been presented to the court today that raises that issue that maybe one or both of you could take care of this child; so that's why there's been an agreement put on the record that everybody's agreed, that we continue this case, give you some time to prove yourselves." The court had earlier stated that if the disposition of the case was made on the present record "there is a question whether or not the two of you [could have] * * * either one or both of you could raise this child[.]"
From this record we infer that the trial judge, because the parties wanted additional time for the reunification plan to be implemented, because without the continuance there was evidence in the record from which he could at that time determine the child should not be reunified with either or both parents, and because there was some evidence that possibly one or both could be reunified with the child if given additional time, granted the continuance request of the mother and the father. There is no evidence in the record from which one could reasonably conclude that the trial court shifted the burden of proof of the absence of reasonable efforts to reunify by BCCSB to appellant.
The trial court granted appellant's request for a continuance of the disposition hearing to accommodate additional reasonable efforts at reunification by BCCSB. The trial court did not err. The second assignment of error is overruled.
YOUNG, P.J., and KOEHLER, J., concur.
[1] Timothy Wagers, father of the child, filed a notice of appeal, which was assigned Butler App. No. CA97-01-007. We consolidated both appeals on February 3, 1997. Wagers failed to timely file a brief. Therefore, we hereby dismiss Wagers' appeal pursuant to Loc.R. 15.
[2] R.C. 2151.353 and 2151.414 were both amended after this case was pending. We apply the former version of the law. See R.C. 158; Woodward v. Eberly (1958), 167 Ohio St. 177, paragraph one of the syllabus.